

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

March 21, 2011

Daniel Francis Mulvihill, IV
Patton Boggs, LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
    (*Attorneys for Plaintiff*)

Joseph A. Boyle
Lauri A. Mazzuchetti
Vincent P. Rao II
Kelley Drye & Warren, LLP
200 Kimball Drive
Parsippany, NJ 07054
    (*Attorneys for Defendant*s)

    RE:    **H2O Plus, LLC v. Arch Personal Care Products, L.P., et al.**
            **Civ. No. 10-3089 (WJM-MF)**

Dear Counsel:

    This matter comes before the Court on Defendants' appeal of Magistrate Judge Falk's November 23, 2010 Order granting Plaintiff's motion to disqualify the law firm of Kelley Drye & Warren, LLC as counsel for Defendants. There was no oral argument. Fed. R. Civ. P. 78. For the reasons that follow, Defendants' appeal is **DENIED**, and Judge Falk's Order granting Plaintiff's motion to disqualify the law firm of Kelley Drye & Warren, LLC as counsel for Defendants is **AFFIRMED.**

**I.    BACKGROUND**

    Plaintiff, H2O Plus, LLC ("H2O"), produces all-natural skincare products. H2O

began developing a new brand, Sea Pure, in 2007, which was 100% natural, vegan, and biodegradable.  (Compl. ¶ 10.)  Plaintiff then sought out an all-natural cosmetic preservative to use in Sea Pure to prevent contaminants, such as mold.  (Compl. ¶ 10.)  H2O decided to use Biovert, an all-natural chemical preservative marketed by Defendants, Arch Personal Care Products, L.P. and Arch Chemicals, Inc. (collectively "Defendants" or "Arch"), and executed four separate purchase orders from Arch for the raw material.  (Compl. ¶¶ 24-25.)  After distributing Sea Pure products for a few months, H2O began to receive complaints from its customers that mold had developed in the products.  (Compl. ¶¶ 2, 50.)  Thereafter, both an independent mycologist and Arch's own testing confirmed heavy mold growth in Sea Pure products containing Biovert. (Compl. ¶¶ 50-53.) As a result, H2O was forced to recall all Biovert-preserved products, amounting to almost 150,000 units.  (Compl. ¶¶ 57-58.)

      Before filing their complaint, H2O first sent a demand letter to Arch requesting payment for the damages H2O had incurred from the recall.  (Judge Falk's November 23, 2010 Opinion, hereinafter "Op.," at 3.)  Arch's response to this demand letter came from Arch's retained counsel, KDW, which rejected the settlement demand and included allegations of their own.  (Op. at 4.)  These allegations included references to a previous voluntary recall by H2O and an FDA audit that both indicated potential mold issues at H2O's facility.  (Op. at 4-5.)

      KDW had previously represented H2O in the sale of its business in 2008.  As part of its representation, KDW allegedly had access to and reviewed thousands of H2O's confidential documents, including confidential documents relating to operating procedures of H2O's manufacturing facilities, FDA audits related to mold issues, and a prior mold-related recall.  (Op. at 5-6.)  On May 10, 2010, H2O wrote to KDW and requested that they cease to represent Arch in this matter, pointing to the "clear conflict of interest" created by KDW's previous representation of H2O.  (Op. at 7.)  KDW refused this request on May 20, 2010, arguing that its prior representation of H2O was not "substantially related" to the current dispute.  (Op. at 8.)

      On June 17, 2010, Plaintiff filed a complaint and commenced this action for breach of contract and fraud against Defendants.  On July 14, 2010, Plaintiff filed a motion to disqualify KDW as counsel for the Defendants, due to KDW's previous representation of H20 Plus in the sale of its business in 2008.  Judge Falk granted Plaintiff's motion, and Defendants filed the instant appeal.

## II.   DISCUSSION

      Plaintiff argues that KDW should be disqualified because its current representation

of Arch is "substantially related" to its previous representation of H2O, such that it is precluded by Rule of Professional Conduct ("RPC") 1.9 and the New Jersey Supreme Court's controlling opinion in *City of Atlantic City v. Trupos*, 201 N.J. 447 (2010). Judge Falk agreed and granted Plaintiff's motion to have KDW disqualified, after applying the test in *Trupos* and finding that KDW had received confidential information during its representation of H2O that can be used in the present litigation.

In their appeal, Defendants argue that KDW should not have been disqualified under the test set forth in *Trupos*, and that Judge Falk erred in two ways: (1) by applying a broader test than the one adopted in *Trupos* and erroneously finding that Plaintiff met its burden of proof; and (2) by erroneously finding that the contents of Defendants' letter in response to Plaintiff's pre-litigation demand supported disqualification.

    A.    **Standard of Review**

A district court may reverse a Magistrate Judge's order if it finds the ruling to be clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). The district court is bound by the clearly erroneous rule as to findings of fact, while the phrase "contrary to law" indicates plenary review as to matters of law. *Haines v. Liggett Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992). A finding is considered "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). A decision is considered contrary to law only if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006).

    B.    **Disqualification Standard**

Under Local Civil Rule 103.1(a), the Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court apply in this District. H2O moved to disqualify KDW based upon RPC 1.9(a), which provides:

> A lawyer who has represented a client in a matter shall not thereafter represent another client in the same or substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

RPC 1.9(a).[1]

RPC 1.9(a) has three requirements that must be satisfied for an attorney to be disqualified: (1) the existence of a past attorney client relationship; (2) that the current representation involves the same or a matter substantially related to the previous representation; and (3) that the interests of the attorney's current client are materially adverse to the interests of the former client. *See Host Marriott Corp. v. Fast Food Operators, Inc.*, 891 F. Supp. 1002, 1007 (D.N.J. 1995). The only factor in dispute here is whether or not KDW's prior representation of H2O is "substantially related" to its representation of Arch in this case.

The New Jersey Supreme Court further defined what satisfies the "substantial relationship" factor of RPC 1.9(a) in *Atlantic City v. Trupos*, which states as follows:

> For purposes of RPC 1.9, matters are deemed to be 'substantially related' if
>
> (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.

201 N.J. 447, 467 (2010).

Finally, motions to disqualify are generally disfavored, since they "can have such drastic consequences." *Rohm and Haas Co. v. Am. Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001). Therefore, the party seeking disqualification must meet a "high standard of proof before a lawyer is disqualified." *Phelps v. D&S Consultants, Inc.*, No. 09-6386, 2010 WL 3186241, at *5 (D.N.J. Aug. 10, 2010).

### C.   **Application of the *Trupos* Test**

Defendants' first argument is that Judge Falk erred in his application of the standard expounded in *Trupos* for determining whether matters are "substantially related" under RPC 1.9. Judge Falk found that the matters here are "substantially related" under *Trupos* and RPC 1.9, since KDW received confidential information during its

---

[1] This disqualification is imputed to the attorney's law firm under RPC 1.10.

representation of H2O that can be used against H2O in this matter. Defendants argue on appeal that Plaintiff failed to show that KDW received confidential information that *can be* used against Plaintiff in the current dispute. (Appeal Br. at 21.) They allege that since the only confidential documents at issue are FDA-related documents containing information about the conditions of Plaintiff's manufacturing facility in 2007, this information cannot possibly be used to prove the manufacturing conditions in 2009. (Appeal Br. at 21-22.)

Despite Defendants' protests, the Court finds that Judge Falk properly applied the standard set forth in *Trupos*. First, he found that Plaintiff provided sufficient evidence to show that KDW had received, in 2008, various confidential FDA-related documents. *See* (Op. at 18-23.) This finding is supported by the evidence on the record, and Defendants do not even directly dispute this finding on appeal. Second, Judge Falk found that this information "can be used" against H2O in the current dispute, while Defendants argue that information from back in 2007 cannot be used against H2O in this matter. However, Judge Falk specifically addressed this argument and pointed to Defendants' letter in response to H2O's demand ("Reply Letter"), discussed below. In their Reply Letter, Defendants expressly state that their defense against H2O's allegations will focus on the state of H2O's manufacturing facilities, and will specifically utilize information related to earlier FDA audits. (Op. at 24-25.) Referring to the Reply Letter, Judge Falk found that "[i]t is not credible for Defendants to state that the 'problems that caused the previous voluntary recall contributed to, if not solely caused, the most recent recall of the Sea Pure Products,' and to simultaneously argue that any information that KDW had access to during the prior representation would be irrelevant and could not be used against H2O in this case." (Op. at 25.) Defendants have provided no argument on appeal that negates this discrediting of their argument that the confidential information cannot be used in this matter.

Additionally, while Defendants claim that Judge Falk applied a test broader than the one in *Trupos* by determining that the information "could be" used, instead of that the information "can be" used, this argument has no merit and is not supported by *Trupos*. As Plaintiff points out, Defendants fail to articulate where the Court in *Trupos* creates such a semantic distinction. (Pl.'s Opp. Br. at 16-17.) On the contrary, in finding that an order of disqualification was not supported, the Supreme Court of New Jersey based its decision on finding that the plaintiff was unable to point to any "confidential communications it shared with the law firm that *could have been or might be used* against it." *Trupos*, 201 N.J. at 469 (emphasis added). *Trupos* does stand for the premise, applied by Judge Falk, that counsel should be disqualified where confidential information received in a prior representation "can be" or "could have been or might be" used against the former client. (Op. at 20, n.9.) Therefore, the Court finds that Judge Falk properly

5

applied the standard set forth in *Trupos* in finding that KDW received confidential information that can be used against H2O in the present matter.

    **D.**  **Contents of the Reply Letter**

  Defendants' second argument is that Judge Falk should not have relied on the Reply Letter, as the information that served as a basis for that letter was neither confidential nor obtained during KDW's prior representation of H2O. (Appeal Br. at 23-24.) Defendants' argument is misplaced. Judge Falk did *not* find that the Reply Letter had already utilized the confidential information KDW had received during their prior representation of H2O. In fact, his Opinion even states that though "Defendants go to great lengths attempting to show that they did not actually rely upon confidential information" in the Reply Letter, such a finding of actual reliance is not necessary. (Op. at 20, n.9.) Instead, Judge Falk only found that (a) KDW had received confidential information in the form of FDA-related documents, and (b) since the FDA-related documents go to the issues Defendants raised in their Reply Letter, Defendants cannot now argue that the confidential documents are not "substantially related" to the present matter. Regardless of what information was *actually* used to form the arguments raised in the Reply Letter, the fact of the matter is that KDW has received unredacted, confidential documents that go to these arguments and could easily be used to bolster these arguments against H2O. *Trupos* does not require courts to find that the confidential information *has been actually used*, as Defendants seem to imply, but simply that it *can be used* against the former client in the matter going forward. *See Trupos*, 201 N.J. at 467. Judge Falk did not err in finding that the confidential information received by KDW can be used against H2O in this matter, and correctly concluded that Plaintiff established that KDW should be disqualified under RPC 1.9(a) and the *Trupos* standard.

**III.**  **CONCLUSION**

  For the foregoing reasons, Defendants' appeal is **DENIED**, and Judge Falk's Order granting Plaintiff's motion to disqualify Kelley Drye & Warren, LLC as counsel for Defendants is **AFFIRMED**. An order accompanies this Letter Opinion.

                   s/ William J. Martini
                   **WILLIAM J. MARTINI, U.S.D.J.**