# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

May 17, 2011

Daniel Francis Mulvihill, IV
Patton Boggs, LLP
One Riverfront Plaza, 6th Floor
Newark, New Jersey 07102
    (*Attorneys for Plaintiff*)

Lindsay H. Taylor
Carella Byrne Cecchi Olstein Brody & Agnello, PC
5 Becker Farm Road
Roseland, NJ 07068
    (*Attorneys for Defendant*s)

    RE:    **H2O Plus, LLC v. Arch Personal Care Products, L.P., et al.**
           **Civ. No. 10-3089 (WJM-MF)**

Dear Counsel:

    This matter comes before the Court on Defendants' motion to dismiss. There was no oral argument. Fed. R. Civ. P. 78. For the reasons that follow, Defendants' motion is **DENIED**, and Defendants' request to strike Plaintiff's demands for specific dollar amounts is **GRANTED.**

## I.    BACKGROUND

    Plaintiff, H2O Plus, LLC ("H2O"), produces all-natural skincare products. H2O began developing a new brand, Sea Pure, in 2007, which was 100% natural, vegan, and biodegradable. (Compl. ¶ 10.) Plaintiff then sought out an all-natural cosmetic preservative to use in Sea Pure to prevent contaminants, such as mold. (Compl. ¶ 10.) H2O decided to use Biovert, an all-natural chemical preservative marketed by

Defendants, Arch Personal Care Products, L.P. ("Arch PCP") and Arch Chemicals, Inc. ("Arch Chemicals") (collectively "Defendants" or "Arch"), and executed four separate purchase orders from Arch for the raw material. (Compl. ¶¶ 24-25.) After distributing Sea Pure products for a few months, H2O began to receive complaints from its customers that mold had developed in the products. (Compl. ¶¶ 2, 50.) Thereafter, both an independent mycologist and Arch's own testing confirmed heavy mold growth in Sea Pure products containing Biovert. (Compl. ¶¶ 50-53.) As a result, H2O was forced to recall all Biovert-preserved products, amounting to almost 150,000 units. (Compl. ¶¶ 57-58.)

After the recall, H2O sent a letter to Arch on March 22, 2010 seeking reimbursement of some of the damages caused by the mold. (Compl. ¶ 62.) In response, Arch immediately cut off H2O's supply of nine other chemicals, which H2O had been using in other product lines. (Compl. ¶¶ 63-66.) H2O then filed a complaint on June 17, 2010, and commenced this action for breach of contract and fraud against Defendants. On July 26, 2010, Defendants filed the instant motion to dismiss.

## II.  DISCUSSION

Plaintiff's eight-count complaint asserts five causes of action against Arch PCP: (1) breach of contract (Count One); (2) breach of express warranty (Count Two); (3) breach of implied warranty of merchantability (Count Three); (4) breach of implied warranty of fitness for a particular purpose (Count Four); and (5) breach of contract and repudiation (Count Eight). The Complaint asserts three causes of action against both Arch PCP and its parent company, Arch Chemicals: (1) fraud (Count Five); (2) negligent misrepresentation (Count Six); and (3) violation of the New Jersey Consumer Fraud Act ("NJCFA") (Count Seven).

In their motion to dismiss, Defendants state that the Complaint should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) because the facts as pleaded fail to distinguish between the two Defendants, Arch PCP and Arch Chemicals. Defendants further argue that: (1) Counts Five and Seven should be dismissed for failing to state a claim as the facts pleaded are implausible; (2) Counts Five, Six and Seven should be dismissed for failing to satisfy the heightened pleading standard required under Federal Rule of Civil Procedure 9(b); (3) Counts Five, Six and Seven should be dismissed as to Arch Chemicals since Arch Chemicals is an improper defendant; and (4) Count Eight should be limited to a claim based upon the single

2

cancelled open order, not based on lost future business with Arch PCP.[1]  Finally, in Defendants' April 15, 2011 Letter to the Court, Defendants also request that the Court strike the specific dollar amount claims for damages that appear in Plaintiff's *ad damnum* clause.  (Def.'s April 15, 2011 Letter, Docket Entry No. 46, at 1-2.)  Each of Defendants' arguments will be addressed in turn below.

> **A.   Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[2] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  The factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see Twombly*, 550 U.S. at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  Furthermore, the Plaintiff must "provide the 'grounds' of his 'entitlement to relief,'" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a

---

[1] Defendants' motion to dismiss also argues that Plaintiff has failed to state a claim under NJCFA, and that Counts Five, Six and Seven are barred by the Economic Loss Doctrine.  (Def.'s Moving Br. at 11-18.)  However, after Defendants' former counsel was disqualified and new counsel was appointed, the Court gave Defendants' new counsel a chance to make any changes to the motion to dismiss they felt necessary.  Defendants' new counsel requested that these arguments (Sections III and IV in Defendants' moving brief) be withdrawn at this time.  (Def.'s April 15, 2011 Letter, Docket Entry No. 46, at 1.)  As such, they will not be addressed.

[2] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

### B. Distinguishing Between Arch PCP and Arch Chemicals

Defendants argue that because Plaintiff refers to the Defendants collectively as "Arch" throughout the description of the facts, the Complaint fails to satisfy the pleading requirements imposed by Federal Rule of Civil Procedure 8 and the Supreme Court's holding in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To satisfy the notice pleading standard under Rule 8, the plaintiff must "provide the 'grounds' of his 'entitlement to relief.'" *Twombly,* 550 U.S. at 555. Certainly that requires some specificity as to which grounds apply to which Defendant. While Plaintiff did lump the Arch Defendants together in the description of the facts, looking to the Complaint and the attached exhibits as a whole clearly shows which claims are made against Arch PCP and which against Arch Chemicals. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) (courts should include exhibits in their motion to dismiss analysis).

The cases cited by Defendants in support of dismissal for failure to specify which allegations are against which defendants are distinguishable, as those cases involve complaints that never specify which counts are alleged against which defendant. *See Robbins v. Oklahoma,* 519 F.3d 1242, 1249-1250 (10th Cir. 2008) (finding that Rule 8 was not satisfied where "no distinction as to what acts are attributable to whom" was provided); *Pietrangelo v. NUI Corp.*, Civ. No. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) (focusing on the fact that Plaintiff failed to distinguish between Defendants in the counts of the complaint). Here, however, the heading of each Count clearly identifies which claim is against which Defendant. Only Counts Five, Six and Seven, which all relate to alleged misrepresentations, are against both Defendants.[3] The other Counts are only alleged against Arch PCP, which is enough to indicate to Arch Chemicals that any facts relating to those counts are not being alleged against it. Furthermore, the exhibits included by Plaintiff provide further specificity as to which claims are against which Defendant. (*See* Compl., Exs. A-D.) While Plaintiff could have

---

[3] The Court agrees with Plaintiff that since at this point, Plaintiff is unsure whether the alleged misrepresentations originated from Arch Chemicals or Arch PCP as they appeared to be acting in concert, the Counts may be alleged against both of them until further discovery is completed. (*See* Pl.'s Opp. Br. at 8-9.)

4

been more specific by not referring to Defendants jointly as "Arch" throughout the description of the facts laid out in the Complaint, the individualized Counts provide sufficiently specific allegations for Defendants to determine the grounds alleged against each of them, satisfying the pleading standard of Rule 8 and *Twombly*.

### C. Counts Five and Seven

In Counts Five and Seven, Plaintiff claims that Defendants made certain representations concerning the efficacy of its Biovert product, that Defendants knew these statements were false, that Plaintiff reasonably relied on these fraudulent misrepresentations, and that Plaintiff has suffered damages as a direct and proximate result. (Compl. ¶¶ 95-101, 114.) Plaintiff alleges that these fraudulent misrepresentations constitute common law fraud (Count Five) and a violation of the New Jersey Consumer Fraud Act (Count Seven) ("NJCFA"). Defendants argue that Counts Five and Seven fail to state claims since they are not plausible on their face under *Twombly*, or in the alternative, because they fail to meet the heightened pleading standard applied to fraud claims under Rule 9(b).[4]

#### 1. Plausibility Under Rule 8

To comply with Rule 8 and survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Defendants claim that both Count Five and Count Seven are implausible, essentially arguing that logically, the idea that Defendants would market and sell a product that did not work and expose themselves to a $15 million damage claim was "implausible." (Defs.' Moving Br. at 7.) Plaintiff argues that the Complaint contains sufficient factual allegations to support the claims pleaded in Counts Five and Seven, and that the allegations are plausible regardless of whether Defendants' motives are

---

[4] Defendants also argue that Rule 9(b) applies to Count Six, which asserts a negligent misrepresentation claim against both Defendants. (Defs.' Moving Br. at 8.) However, Rule 9(b) only applies to claims that "sound in fraud." *In re Suprema Specialties, Inc. Securities Litig.*, 438 F.3d 256, 270 (3d Cir. 2006). Therefore, Rule 9(b) only applies to negligent misrepresentation claims that sound in fraud, not those that sound in negligence. Here, Plaintiff's claim sounds in negligence on the part of Defendants. Plaintiff alleges in Count Six that "Arch did not adequately investigate or have sufficient knowledge of its statements," and that the statements regarding the quality of Biovert "were made negligently and with a disregard to the truth of the statements." (Compl. ¶ 104.) These allegations sound in negligence and are distinct from Plaintiff's fraud claims, and thus Rule 9(b) does not apply to Count Six. *See In re Suprema*, 438 F.3d at 272 (holding that a plaintiff may avoid the requirements of Rule 9(b) if "ordinary negligence is expressly pled in connection with" the claim).

discernable.

To state a claim under the NJCFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 219 (3d Cir. 2010) (quoting *N.J. Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 842 A.2d 174, 176 (N.J. Super. Ct. App. Div. 2003)). Similarly, to state a claim for common law fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the plaintiff rely on it; (4) reasonable reliance on the misrepresentation by the plaintiff; and (5) resulting damages. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 691 A.2d 350, 367-368 (N.J. 1997)).

Plaintiff has alleged enough facts to support the elements of both these Counts. The Complaint points to specific marketing materials and brochures as Defendants' alleged misrepresentations, such as a 2006 Biovert product data sheet, a 2007 Biovert Technical Information sheet, and a revised 2009 Biovert Technical Information sheet. (Compl. ¶¶ 17-20.) Plaintiff further provides factual allegations that Defendants knew Biovert was ineffective, stating that Arch required Plaintiff to use a prescribed testing protocol that allegedly prevented Plaintiff from observing the product's ineffectiveness. (Compl. ¶¶ 26-29.) Finally, Plaintiff provides factual allegations that Plaintiff relied on these data sheets in purchasing the product, and that Plaintiff subsequently suffered damages as a result. (*See* Compl. ¶¶ 24-29, 57-61.)

The Court agrees with Plaintiff that Defendants have misinterpreted what is required at the pleading stage under *Twombly*. While Defendants are correct that Plaintiff's claims must be plausible on their face, there is no requirement that Plaintiff must also plead a plausible motive for Defendants actions. Plaintiff is only required to provide "'enough factual matter (taken as true) to suggest' the required element[s]" of the claims asserted. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Therefore, the only elements relating to Defendants' states of mind that must be pleaded by Plaintiff are the knowledge that the product was ineffective and the intent that Plaintiff rely on the misrepresentations. As already stated above, Plaintiff has provided enough factual allegations supporting these elements to satisfy the pleading requirements of Rule 8 and *Twombly*.

### 2. Heightened Pleading Standard Under Rule 9(b)

While Counts Five and Seven satisfy the pleading standard under Rule 8, because

these counts sound in fraud they must also satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06-2256, 2007 WL 2459349, *11 (D.N.J. Aug. 22, 2007) (Rule 9(b) applies to "NJCFA claims as well as common law fraud claims"). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A plaintiff must state the circumstances of the alleged fraud "with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico*, 507 F.3d at 200 (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-224 (3d Cir. 2004)). This standard can be satisfied by either alleging the "date, time and place of the alleged fraud," or by "otherwise inject[ing] precision or some measure of substantiation" in the allegation. *Id.* Furthermore, any allegations of misrepresentations must include who made the misrepresentation to whom, as well as the "general content of the misrepresentation." *Lum*, 361 F.3d at 224. Finally, elements relating to a person's condition of mind, such as malice, intent, or knowledge, may be alleged generally. Fed. R. Civ. P. 9(b).

Here, Plaintiff's allegations of common law fraud and of a violation of the NJCFA satisfy the heightened pleading standard of Rule 9(b). As with the discussion above regarding Plaintiff's distinction between the two Defendants, the issue here is not whether Plaintiff could have been more specific, but simply whether Plaintiff has pleaded enough facts to satisfy the pleading requirements. Plaintiff provides the following in the Complaint: (1) excerpts from a 2006 product data sheet, as well as Biovert Technical Information sheets from June 11, 2007 and July 2, 2009, containing alleged misrepresentations regarding the efficacy of Biovert (Compl. ¶¶ 17-20); (2) that these data sheets were provided to Plaintiff by Arch Chemicals and Arch PCP (Compl. ¶¶ 17-19); and (3) that in the fall and winter of 2008, Plaintiff received allegedly fraudulent testing instructions from Defendants (Compl. ¶ 26). Thus, the Complaint provides the requisite notice of the precise nature of the fraud alleged. Accordingly, the Court finds that Counts Five and Seven satisfy the heightened pleading requirements of Rule 9(b).

### D.      Counts Five, Six and Seven as Against Arch Chemicals

Defendants additionally argue that Counts Five, Six and Seven are improperly alleged against Arch Chemicals, the parent company, as well as Arch PCP. Defendants claim that since Plaintiff's factual allegations are really against Arch PCP, Arch Chemicals cannot be held liable based on its status as the parent company. (Defs.' Moving Br. at 19.) Plaintiff, on the other hand, claims the Complaint includes factual allegations against Arch Chemicals directly, and that therefore Plaintiff is only seeking to hold Arch Chemicals liable for its own conduct. (Pl.'s Br. at 10.)

Defendants are correct that a parent company cannot be held liable for the acts of its subsidiary merely through ownership of that subsidiary. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998). However, nowhere in the Complaint does Plaintiff allege that Arch Chemicals is liable for Arch PCP's actions. Instead, the Complaint alleges some counts against both Arch Chemicals and Arch PCP, namely Counts Five, Six and Seven. (Compl. ¶¶ 95-114.) Plaintiff claims that the alleged misrepresentations underlying these counts, presented in marketing materials and testing protocols given to Plaintiff, were made by both Arch PCP and Arch Chemicals. (Pl.'s Opp. Br. at 8.) Plaintiff's allegations against Arch Chemicals stem from evidence that Arch Chemicals may have been the source of some of these allegedly fraudulent documents, such as the testing protocols bearing the Arch Chemicals letterhead and logo. (*Id.* at 9.) Since Plaintiff is not basing its claims against Arch Chemicals on ownership of Arch PCP, but instead on alleged conduct by Arch Chemicals itself in concert with Arch PCP, Defendants' motion to dismiss all claims against Arch Chemicals is denied.

### E. Count Eight – Breach of Contract and Repudiation

In Count Eight, Plaintiff brings claims of breach of contract and repudiation against Arch PCP, alleging that it suffered damages from Arch PCP's refusal to provide H2O with any new shipments of raw chemicals after H2O requested reimbursement of some of the damages caused by Biovert. (Compl. ¶¶ 115-123.) The Complaint refers generally to "numerous contracts" with Arch PCP for "approximately nine different chemicals (excluding Biovert)." (Compl. ¶ 116.) However, the only specific contract referred to in the Complaint is a March 12, 2010 purchase order for Biomin Aquacinq liquid. (Compl. ¶¶ 117-121.) The purchase order was for $630.72 worth of Biomin Aquacinq liquid, and was rejected by Arch PCP with the note, "[e]ffective immediately Arch Personal Care Products, LP will no longer supply raw materials to H2O Plus." (Compl., Ex. F.) Furthermore, the Complaint refers to this purchase order as the only open and pending order that Arch PCP cancelled. (Compl. ¶¶ 63, 64.) Defendants argue that Plaintiff's claims of breach of contract and repudiation in Count Eight at least should be limited to the Biomin Aquacinq liquid invoice only, and that Plaintiff should not be able to demand damages arising out of Defendants' choice to end the business relationship.

The Court agrees with Defendants that Count Eight, a breach of contract and repudiation claim, must be limited to the pending purchase order identified. As pleaded, the Complaint only refers to one contract that was allegedly breached and repudiated by Defendants: the March 12, 2010 purchase order. Plaintiff does not refer to any other contracts or implied contracts that could be the basis for Count Eight. As for Plaintiff's allegation in its Opposition Brief that Defendants breached an implied covenant of good

8

faith and fair dealing by ending their long-standing relationship, the Court will not address this argument at this time since Plaintiff did not plead such an allegation in the Complaint.  (*See* Pl.'s Opp. Br. at 24-25.)  Therefore, Count Eight as currently pleaded states a claim for breach of contract and repudiation, but only as to the March 12, 2010 purchase order for Biomin Aquacinq liquid.  (Compl., Ex. F.)  The specific amounts of damages alleged by Plaintiff is a separate issue addressed below.

    **F.**    **Request to Strike**

In Defendants' April 15, 2011 Letter, Defendants further request that the Court strike Plaintiff's inclusion of specific dollar amounts of damages pled in the *ad damnum* clauses.  (Defs.' April 15, 2011 Letter, at 1-2.)  Under Local Civil Rule 8.1, "[a] pleading which sets forth a claim for relief in the nature of unliquidated money damages shall state in the *ad damnum* clause a demand for damages generally without specifying the amount."  Plaintiff, however, included demands for specific dollar amounts, which is prohibited by this rule.  The Court agrees with Defendants that the dollar amounts listed in each *ad damnum* clause must be stricken pursuant to Local Civil Rule 8.1.

**III.**    **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**, and Defendants' request that the Court strike Plaintiff's demands for specific dollar amounts is **GRANTED**.  An order accompanies this Letter Opinion.

    s/ William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**